

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2011 DEC 12  PM 4: 22

CLERK OF COURT

Michael J. McKleroy, Jr.
SBN: 24000095, FBN: 576095
C. Charles Townsend
SBN:  24028053, FBN: 1018722
Walter McInnis
SBN: 24046394, FBN: 588724
AKERMAN SENTERFITT, LLP
2001 Ross Avenue, Suite 2550
Dallas, Texas 75201
Telephone: 214.720.4300
Facsimile:  214.981.9339
ATTORNEYS FOR DEFENDANTS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| MARTHA L. PRICE AND ANGELA L. PRICE, | § § § | |
| Plaintiffs, | § § § | |
| vs. | § § | Civil Action No. 4:11-CV-799-A |
| BANK OF AMERICA, N.A., THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR CWABS, INC., ASSET BACKED CERTIFICATES, SERIES 2007-02, | § § § § § § § | |
| Defendants. | § | |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION

## TO DISMISS PLAINTIFFS' FIRST AMENDED PETITION

## TABLE OF CONTENTS

I.    Nature and Stage of the Proceeding. .................................................................. 1

II.   Issue to be Ruled Upon and Standard of Review. ................................................ 2

III.  Short Summary of Argument. ............................................................................. 3

IV.   Factual Allegations and Procedural Background. ................................................. 3

    A.   Factual Allegations. ....................................................................................... 3

    B.   Causes Of Action. .......................................................................................... 4

    C.   Procedural Background. .................................................................................. 6

V.    Argument and Authorities ................................................................................... 7

    A.   The Foundation Of The Prices' Allegations Is Meritless. ................................ 7

    B.   The Prices Failed To Plead A Cause Of Action For Fraud. ............................. 10

       1.  The Prices' allegations do not amount to fraud   ........................................ 10

       2.  The Prices have not alleged a fraud claim because they have not
          alleged detrimental reliance. .................................................................. 11

    C.   The Prices Failed to Plead a Right to Relief Under the TDCA............................ 12

       1.   Defendants could not have breached contractual provisions that do not exist.............. 15

       2.   The statute of frauds prevents extra-contractual promises
           from modifying the Parties' obligations. ......................................................... 16

       3.   The Prices fail to allege any facts to support any breach of the Loan Documents ........ 17

    D.   The Prices' Attempt To Plead A Violation Of The Texas Deceptive
       Trade Practices Act Fails As A Matter Of Law. ................................................ 13

    E.   The Prices Failed to Plead a Viable Cause of Action Under RESPA ...................... 14

    F.   The Prices Failed To Plead A Breach of Contract Claim Fails as a Matter of Law...   15

       1.   Defendants could not have breached contractual provisions that do not exist. ...........15

       2.   The statute of frauds prevents extra-contractual promises from
           modifying the Parties obligations................................................................16

       3.   The Prices fail to allege any facts to support any breach of the Loan.....................17

    G.   The Prices Failed To Allege A Basis To Award Them Declaratory Relief....................... 15

    H.   The Prices Have Not Alleged An Entitlement To An Accounting. .................................. 20

    I.   The Prices Are Not Entitled To Injunctive Relief. ............................................. 20

VI.   Conclusion .......................................................................................................... 20


## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acker v. Texas Water Comm'n*, 790 S.W.2d 299 (Tex. 1990) .......................................................... 9

*Aguero v. Ramirez*, 70 S.W.3d 372 (Tex. App.—Corpus Christi 2002, pet denied) ...................... 7

*Alexander v. Wells Fargo Bank, N.A.*, No. 02-10-00005-CV,
 2011 WL 1331519, at *3 (Tex. App.-Fort Worth Apr. 7, 2011, no pet. h.) .............................. 9

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................ 2, 10, 12, 14, 17

*Atlanta Gas Light v. Aetna Cas. and Sur. Co.*, 68 F.3d 409 (11th Cir. 1995) .............................. 18

*Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.)... 16

*Bell Atl. v. Twombly*, 127 S. Ct. 1955 (2007) ......................................................................... 2, 10

*Broyles v. Chase Home Fin.*, No. 3:10-CV-2256-G,
 2011 WL 1428904, at *3 (N.D. Tex. Apr. 13, 2011)..................................................................... 8

*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002) ............................................................. 20

*Cade v. BAC Home Loans Servicing, L.P.*, No. H-10-4224,
 2011 WL 2470733, at *3-4 (S.D. Tex. June 20, 2011)................................................................ 16

*Cameron v. Terrell & Grant, Inc.*, 618 S.W.2d 535 (Tex. 1981) ................................................... 9

*Carter v. Gray*, 81 S.W.2d 647 (Tex. 1935)................................................................................... 7

*Centurion Planning Corp. v. Seabrook Venture II*,
 176 S.W.3d 498 (Tex. App.–Houston [1st Dist.] 2004) ............................................................. 9

*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994)............................................................................. 3

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)........................................... 3

*DeLoach v. Woodley*, 405 F.2d 496 (5th Cir. 1968) ..................................................................... 21

*Deuley v. Chase Home Finance LLC*, No. 4:05-CV-4253,
 2006 WL 1155230 (S.D. Tex. April 26, 2006) ..................................................................... 16, 17

*Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147 (Tex. App.—Fort Worth 2007, pet. denied) .......... 13

*Garcia v. Karam*, 276 S.W.2d 255 (Tex. 1955) ........................................................................... 16

*Gonzales v. Kay*, 577 F.3d 600 (5th Cir. 2009) ............................................................................ 2

*Griffin v. BAC Home Loans Servicing, L.P.*, No. H-09-03842,
 2011 WL 675285, at *2 (S.D. Tex. Feb. 26, 2011) ..................................................................... 8

*Hornbuckle v. Countrywide Home Loans, Inc.*, No. 02-09-00330-CV (Tex. App.—Fort Worth
 May 19, 2011)................................................................................................................................ 9

*Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466 (5th Cir. 2002) ................................... 17

*In re First Merit Bank*, 52 S.W.3d 749 (Tex. 2001) .................................................................... 10

*Kan v. OneWest Mortgage*, No. 1:11-cv-381-SS, Order at 6-7 (W.D. Tex. Oct. 27, 2011)....... 7, 8

*La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558 (Tex. 1984) ..................... 13

*Landscape Design and Constr., Inc. v. Transport Leasing/Contract, Inc.*,
2002 WL 257573 (N.D. Tex. Feb. 19, 2002) ............................................ 19

*Lazidis v. Goidl*, 564 S.W.2d 453 (Tex. App.–Dallas 1978, n.w.h.) ............................................. 7

*Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015 (5th Cir. 1996) ............................................ 3

*Maginn v. Norwest Mortg., Inc.*, 919 S.W.2d 164 (Tex. App.—Austin 1996, no writ) .............. 13

*Marketic v. U.S. Bank Nat'l Assoc.*, 436 F. Supp. 2d 842 (N.D. Tex. 2006) ............................... 13

*Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605 (Tex. App.—San Antonio 1996, no writ) ........ 13

*Michael v. Dyke*, 41 S.W.3d 746 (Tex. App.—Corpus Christi 2001) ......................................... 20

*Porter v. Countrywide Home Loans, Inc.*, No. V-7075,
2008 WL 2944670 at *3 (S.D. Tex. July 24, 2008) ................................................ 14

*Regent Int'l Hotels, Ltd. v. Las Colinas Hotels Corp.*,
704 S.W.2d 101 (Tex. App.—Dallas 1985, no writ) .......................................... 11

*Reliable Consultants, Inc. v. Earle*, 517 F.3d 738 (5th Cir. 2008) ................................... 2

*Republic Nat'l Bank v. Nat'l Bankers Life Ins. Co.*,
427 S.W.2d 76 (Tex. Civ. App.—Dallas 1977, no writ) .......................................... 17

*Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex. 1980) ....................................... 13

*Sawyer v. Mortg. Elec. Registration Sys., Inc.*, No. 3:09-CV-2303-K, 2010 WL 996768, at *3
(N.D. Tex. Feb 1, 2010) .................................................... 8

*Scanlan v. Tex. A & M Univ.*, 343 F.3d 533 (5th Cir. 2003) .......................................... 3

*Slaughter v. Quails*, 162 S.W.2d 671 (Tex. 1942) ............................................. 7

*Stein v. Chase Home Fin., LLC*, No. 09-1995 (MJD/JJG),
2010 WL 4736828, at *3 (D. Minn. Aug. 13, 2010) ..................................... 9

*T.F.W. Mgmt, Inc. v. Westwood Shores Prop. Owners Ass'n*,
79 S.W.3d 712 (Tex. App.—Houston [14th Dist.] 2002) ...................................... 20

*Taylor v. Books A Million, Inc.*, 296 F.3d 376 (5th Cir. 2002) ....................................... 2

*United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262 (5th Cir. 2010) ..................... 2

*Wigginton v. Bank of New York Mellon*, No. 3:10-CV-2128-G,
2011 WL 2669071, at *5  (N.D. Tex. July 7, 2011) ................................... 19

*Wigginton v. Bank of New York Mellon*, No. 3:10-CV-2128-G,
2011 WL 2669071, at *2, n. 2  (N.D. Tex. July 7, 2011) ...................................... 20

**Statutes**

12 U.S.C. §2605 ........................................................................................................ 5

28 U.S.C. § 2201(a) ........................................................................................... 18

Texas Business & Commerce Code Section 17.50(a) ......................................... 13

Texas Business & Commerce Code Section 26.02 .................................................. 16

Texas Business & Commerce Code Section 26.02(a)(2).................................................... 17

Texas Business & Commerce Code Section 26.02(b)....................................................... 16

Texas Business & Commerce Code Section 9.109(d)(11) ................................................. 7

Texas Property Code Section 51.002.............................................................................. 7

Texas Property Code Section 51.0001(3) ........................................................................ 8

Texas Property Code Section 51.0001(4)(c)..................................................................... 8

Texas Property Code Section 51.0025............................................................................. 8

Defendants Bank of America, N.A. ("BANA") and The Bank of New York Mellon, as trustee for CWABs, Inc. Asset Backed Certificates, Series 2007-02 ("BONY") (collectively, "Defendants") move to dismiss the *First Amended Petition*[1] [*sic*] (the "Amended Complaint") filed by Plaintiffs Martha L. Price and Angela L. Price (collectively the "Prices") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for the failure to state a claim upon which relief may be granted.  In support thereof, Defendants respectfully submit this brief in support of their motion.

## I.  NATURE AND STAGE OF THE PROCEEDING.

The Prices are joint borrowers relating to a loan secured by the object of this litigation, the property located at 4820 Park Brook Drive, Fort Worth, Texas 76137 (the "Property").  They brought this "show-me-the-note" suit in state court on October 31, 2011 seeking to enjoin foreclosure and damages.[2]  Defendants removed to this court on November 9.[3]  The Prices filed the Amended Complaint on November 28.

The Prices contend neither BANA nor BONY have the authority to foreclose their lien against the Property because, according to the Prices, they cannot prove they have possession of the original promissory note.  Based primarily upon this contention, the Prices bring claims for: (1) fraud; (2) wrongful debt collection practices in violation of the Texas Debt Collection Act ("TDCA"); (3) violation of the Texas Deceptive Trade Practices Act ("DTPA"); (4) request for declaratory relief; (5) violation of the Real Estate Settlement Procedures Act ("RESPA"); and (5) breach of contract.  In addition to declaratory relief, the Prices seek to recover damages and permanent injunctive relief awarding the Property to them free and clear of any lien claimed by Defendants.

---

[1] *See* First Amended Petition, Docket Entry 8.
[2] *See* Original Petition.
[3] *See* Docket Entry 1.

## II. ISSUE TO BE RULED UPON AND STANDARD OF REVIEW.

The Court must decide whether the Prices plead facts in their Amended Complaint that give rise to a plausible claim for relief on their face. Setting aside all conclusory allegations, the Court must accept all well-pleaded factual allegations as true, and interpret the Amended Complaint in the light most favorable to the Prices. *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010). Their factual allegations must support a claim to relief that is plausible on its face and rises above mere speculation. *Id.*

Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss under federal pleading standards, "the plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (internal quotation marks omitted). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). A formulaic recitation of the elements, because of its conclusory nature, is not entitled to the usual presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009). A plaintiff must instead plead facts, and those facts "must be enough to raise a right to relief above the speculative level." *Bell Atl. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007). Moreover, a complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949.

In deciding a motion to dismiss, a court may consider not only the allegations made in the plaintiff's complaint, but also any documents incorporated in the pleading and all matters of

which judicial notice may be taken. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996). All documents referred to in the plaintiff's complaint, and which are central to the plaintiff's action, are considered "incorporated in the pleading." *See Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–90 (5th Cir. 2000) ("[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his or] her claim."). In addition, "a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

### III. SHORT SUMMARY OF ARGUMENT.

The Court should dismiss the Amended Complaint because, even if the factual allegations were true, there would be no grounds to grant them relief against Defendants. Their central claim regarding Defendants' authority to foreclose is unambiguously wrong under Texas law. As to their other claims, they simply assert no facts that could animate a cause of action for which Defendants could be liable.

### IV. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND.

#### A. Factual Allegations.

According to the few factual allegations in the Amended Complaint—which, for purposes of this motion, must be taken as true[4]—the Prices[5] allege they "signed a Promissory Note and Deed of Trust in order to purchase the [Property] on or about December 22, 2006."[6]

---

[4] Defendants do not concede the truth of these allegations, but recite them *arguendo* for this motion.

[5] Citations to the Amended Complaint throughout this motion are *sic*. In particular, the Prices are indiscriminate in use of plural, possessive, and plural possessive pronouns. The Prices, Martha and Angela, even make the bizarre claim they "are sometimes hereinafter referred to collectively as he, she, him, her or Plaintiff. Rather than attempt to draw meaningful distinctions—after close inspection there do not appear to be any, rather a deliberately casual approach to grammar—Defendants cite the Amended Complaint as drafted.

[6] *See* Amended Complaint ¶ 8; *see* App. at 1-5, Note, **Exhibit 1**; *see* App. at 6-26, Deed of Trust, **Exhibit 2**. As evidenced by the Deed of Trust, the Prices did not sign the Note and Deed of Trust (collectively the "Loan") to purchase the Property, but to refinance an existing loan secured by the Property. *See* Deed of Trust, Renewal And

The Prices allege "the note" "was assigned and/or sold to at least one third party and eventually was assigned to or purchased by CWABS, INC., ASSET BACK CERTIFICATES, SERIES 2007-02."[7] They claim they "received correspondence from [BANA] . . . threatening to foreclose on their home" as the "'servicer' of the loan for [BONY], who purports to be the trustee for the current note holder CWABS, INC., ASSET BACKED CERTIFICATES< SERIES 2007-02."[8] The Prices merely allege they "do not know the exact details of how or when [BANA] obtained the right to collect their mortgage payments," "do[] not know who [BONY] is" and "do[] not believe [BONY] own[s] the mortgage."[9]

In addition, the Prices allege they "did not receive proper notice from any party that the note had been assigned or packaged as some type of mortgage backed security."[10] The Prices claim that, when "their loan was securitized into the trust identified as CWABS, INC., ASSET BACKED CERTIFICATES, SERIES 2007-02 . . . [their] note was converted by the note holder into a stock, and was no longer a negotiable instrument that could be subject to the rights granted in the deed of trust, in particular the power of sale by non-judicial foreclosure of the asset securing the loan."[11]

The Prices claim they requested the foreclosure sale scheduled for November 1, 2011 be postponed "until the debt is validated and the true holder of the note is known."[12]

---

Extension Exhibit, App. at 25. The Prices acquired the Property four and a half years earlier, June 6, 2002. *See* Special Warranty Deed, App. at 27-32, **Exhibit 3**.
[7] *See* Amended Complaint ¶ 8; *see* App. at 33, Assignment of Deed of Trust, **Exhibit 4**.
[8] *See* Amended Complaint ¶ 9; *see* App. at 34-35Notice of Substitute Trustee's Sale, **Exhibit 5**.
[9] *See* Amended Complaint ¶¶ 9, 15.
[10] *See* Amended Complaint ¶¶ 10, 16.
[11] *See* Amended Complaint ¶ 18.
[12] *See* Amended Complaint ¶ 12.

## B. Causes Of Action.

The Prices state six causes of action. The Prices allege Defendants are liable for fraud because they misrepresented their authority to enforce the loan and misrepresented the amount due.[13]

The Prices claim Defendants are liable for violations of "section 392.301" of the TDCA, as well as the DTPA under the TDCA's tie-in provision, because they: (1) attempted to enforce the loan "without the ability to prove they are in fact the holder of the note;" (2) issued notice of the foreclosure sale "without having the legal authority to do so;" and (3) "failed to validate the debt after written requests have been made."[14] The Prices further allege "[a]ll alleged transfers, assignments and misstatements of facts regarding the Note by Defendants, and the failure of Defendants to stop foreclosure, constitute violations of the Texas Finance Code."[15]

The Prices further claim Defendants directly violated the DTPA by committing an unconscionable act or practice, as well as violations of eight other "laundry list" provisions by: (1) threatening foreclosure without first providing they have the ability to enforce the note by proving they are the holder of the note;[16] (2) representing a mortgagee-mortgage servicer relationship between BANA and BONY existed;[17] and (3) representing BANA had the ability to appoint a substitute trustee and issue a notice of foreclosure sale.[18]

The Prices further allege Defendants "violated terms of RESPA, 12 U.S.C. §2605" by "failing to notify Plaintiffs of transfers and assignments of interest [and] mortgage servicing duties at the time of transfer."[19]

---

[13] *See* Amended Complaint ¶¶ 20-21.
[14] *See* Amended Complaint ¶ 23.
[15] *See* Amended Complaint ¶ 24.
[16] *See* Amended Complaint ¶ 31.
[17] *See* Amended Complaint ¶ 35.
[18] *See* Amended Complaint ¶ 36.
[19] *See* Amended Complaint ¶ 42.

The Prices next allege Defendants are liable for breach of contract by: (1) not assigning or transferring the note in accordance with the terms the Loan;[20] (2) failing to appoint the substitute trustee according to the terms of the Loan;[21] (3) providing false information and taking improper collection actions in violation of the Loan;[22] (4) breaching the duty to attempt to modify the terms of the Loan in good faith;[23] (5) failing to provide timely and accurate account statements as requested and required by the Loan;[24] and (6) violating unspecified "Housing and Urban Development rules and regulation [*sic*] in lending," which the Prices claim are incorporated by referenced into the Loan.[25]

Finally, the Prices ask the court for a judgment declaring: (1) any attempt to foreclosure is an action to collect a debt and, therefore, Defendants must produce the original promissory note prior to proceeding with foreclosure;[26] and (2) BANA acted unconscionably towards the Prices.[27]

## C. Procedural Background.

The Prices brought suit in state court on October 31, 2011 seeking to stop foreclosure, seeking damages, and challenging Defendants' authority to foreclose.[28] Defendants removed to this court on November 9.[29] The Prices filed the Amended Complaint on November 28.[30]

---

[20] *See* Amended Complaint ¶ 44(a).
[21] *See* Amended Complaint ¶ 44(b).
[22] *See* Amended Complaint ¶ 44(c).
[23] *See* Amended Complaint ¶ 44(d).
[24] *See* Amended Complaint ¶ 44(e).
[25] *See* Amended Complaint ¶ 43.
[26] *See* Amended Complaint ¶ 40.
[27] *See* Amended Complaint ¶ 41.
[28] *See* Original Petition.
[29] *See* Notice of Removal, Docket Entry 1.
[30] *See* Amended Complaint, Docket Entry 8.

## V.  ARGUMENT AND AUTHORITIES

### A.  The Foundation of the Prices' Allegations Is Meritless.

Initially, Defendants contend the underlying premise of the Prices suit—that Defendants must have possession of the original promissory note (and, upon demand, prove such possession) in order to enforce the deed of trust—is unsupported by Texas law.  In support of their contention, the Prices rely upon section 3.301 of the Texas Business & Commerce Code, claiming [a] foreclosure action is merely a collection action on a negotiable instrument."[31]  But not only does the Texas Uniform Commercial Code expressly state it does not govern the foreclosure of security interests in real property, *see* TEX. BUS. & COM. CODE § 9.109(d)(11), Texas law has long recognized foreclosure enforces the deed of trust, not the underlying note. *See e.g. Carter v. Gray*, 81 S.W.2d 647, 648 (Tex. 1935) ("it is so well settled as not to be controverted that the right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure of lien are severable"); *Slaughter v. Quails*, 162 S.W.2d 671 (Tex. 1942) (a trustee's power to sell a debtor's property derives solely from the deed of trust); *Aguero v. Ramirez*, 70 S.W.3d 372, 375 (Tex. App.—Corpus Christi 2002, pet denied) (explaining separate and distinct rights to pursue collection of a note and enforcement of its security instrument); *Lazidis v. Goidl*, 564 S.W.2d 453, 456 (Tex. App.–Dallas 1978, n.w.h.) (same); *see also Kan v. OneWest Mortgage*, No. 1:11-cv-381-SS, Order at 6-7 (W.D. Tex. Oct. 27, 2011).[32]

On the other hand, the only statute governing the enforcement of a deed of trust which creates a lien against real property is chapter 51 of the Texas Property Code.  *See* TEX. PROP. CODE § 51.002 ("Sale of Property Under Contract Lien").  Chapter 51 authorizes a "mortgagee"

---

[31] *See* Amended Complaint ¶¶ 13-16.
[32] *See* Order, App. at 36-45, **Exhibit 6**.

to enforce a security instrument through a non-judicial foreclosure sale, either directly or through a mortgage servicer. TEX. PROP. CODE § 51.0025 ("A mortgage servicer may administer the foreclosure of property under Section 51.002 on behalf of a mortgagee if . . ."); *see also* TEX. PROP. CODE § 51.0001(3) (recognizing that "[a] mortgagee may be the mortgage servicer"). Pursuant to chapter 51, a "mortgagee" is defined in a number of different ways, including "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." TEX. PROP. CODE § 51.0001(4)(c). In this case, the Deed of Trust was assigned of record and BONY is the last person to whom it was assigned of record.[33] Thus, BONY is a mortgagee of the Deed of Trust. Moreover, BANA, in its capacity as the mortgage servicer of the Loan,[34] has the authority to enforce a security instrument through non-judicial foreclosure. TEX. PROP. CODE § 51.0025; *see also Broyles v. Chase Home Fin.*, No. 3:10-CV-2256-G, 2011 WL 1428904, at *3 (N.D. Tex. Apr. 13, 2011).

And there is simply no authority interpreting chapter 51 of the Texas Property Code to require a person who otherwise qualifies as a mortgagee or mortgage servicer to also own or hold the Note or the Deed of Trust. *See, e.g., Broyles*, 2011 WL 1428904 at *3 (noting Texas Property Code "contemplates that someone other than the holder of the original note . . . may lawfully foreclose on the security interest."); *Griffin v. BAC Home Loans Servicing, L.P.*, No. H-09-03842, 2011 WL 675285, at *2 (S.D. Tex. Feb. 26, 2011); *Sawyer v. Mortg. Elec. Registration Sys., Inc.*, No. 3:09-CV-2303-K, 2010 WL 996768, at *3 (N.D. Tex. Feb 1, 2010), *adopted*, 2010 WL 996917 (N.D. Tex. Mar. 17, 2010); *Kan v. OneWest*, supra, at 6-7.[35] Certainly, there is nothing in the express language in chapter 51 requiring a "mortgagee" or

---

[33] *See* App. at 33, Assignment of Deed of Trust, **Exhibit 4**.

[34] *See* Amended Complaint, ¶¶ 9, 29, 42; *see also* App. at 34-35, Notice of Substitute Trustee's Sale, **Exhibit 5** (identifying "Mortgage Servicer" as "Bank of America, N.A.").

[35] *See* App. at 36-45, **Exhibit 6**.

"mortgage servicer" to also own or hold the promissory note. And, presumably, if the Texas legislature had intended to do so, it could easily have included language imposing such a requirement. But it did not do so. Because it did not do so, it is presumed the omission was intentional. *See e.g., Cameron v. Terrell & Grant, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose . . . [l]ikewise, every word excluded from a statute must also be presumed to have been excluded for a purpose."); *see also Centurion Planning Corp. v. Seabrook Venture II*, 176 S.W.3d 498, 505 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *see also Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) (courts must also presume that the Texas legislature enacted law with complete knowledge of the prior law, including any case law).

Nor is there any authority supporting the Prices contention Defendants must produce the original note to them prior to conducting a foreclosure sale. As observed by the Fort Worth Court of Appeals,

> "In 2009, a foreclosure defense colloquially termed 'show me the note' began circulating through courts across the country. Advocates of this theory believe 'that only the holder of an original wet-ink signature note has the lawful power to initiate a non judicial foreclosure.' Courts have routinely rejected the defense on the ground that foreclosure statutes simply do not require production of the original note at any point during the proceedings."

*Hornbuckle v. Countrywide Home Loans, Inc.*, No. 02-09-00330-CV (Tex. App.—Fort Worth May 19, 2011) (citing *Stein v. Chase Home Fin., LLC*, No. 09-1995 (MJD/JJG), 2010 WL 4736828, at *3 (D. Minn. Aug. 13, 2010), *adopted*, 2010 WL 4736233 (D. Minn. Nov. 16, 2010) (citations omitted); *see also Alexander v. Wells Fargo Bank, N.A.*, No. 02-10-00005-CV, 2011 WL 1331519, at *3 (Tex. App.-Fort Worth Apr. 7, 2011, no pet. h.) (mem. op.); *Kan v. OneWest*, *supra*, Order at 7.

In summary, the facts show BONY and BANA were each individually duly authorized to conduct the foreclosure sale as mortgagees. Merely alleging, as the Prices have here, that Defendants were not the owner or holder of the Note does not allege a lack of authority to

foreclose because, as the Texas Property Code recognizes, BONY qualifies as a mortgagee as the last party to whom the power to foreclose was assigned of record and BANA qualifies as a mortgage servicer. At best, the Prices allegations fail to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, or "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1949. Thus, each of the Prices' claims premised on the theory that either Defendant lacked authority to conduct a foreclosure sale fail to state a claim and must be dismissed.

## B. The Prices Failed To Plead A Cause Of Action For Fraud.

The allegations made by the Prices to support their claim for fraud are similarly defective. First, the Prices fail to allege sufficient facts to support a conclusion fraud occurred and, second, any such claim would be barred by the statute of frauds.

### 1. The Prices' allegations do not amount to fraud.

The elements of common-law fraud in Texas are (1) the defendant made a material false representation to the plaintiff with, (2) the intention the plaintiff act on it (either knowing the representation was false or reckless, as a positive assertion, and without knowledge of its truth), (3) under circumstances in which the plaintiff acted on the representation, and (4) suffered injury thereby. *See, e.g.*, *In re First Merit Bank*, 52 S.W.3d 749, 758 (Tex. 2001). What appears to be the essence of the Prices' sparse factual allegations regarding their claim for fraud is twofold: (1) Defendants misrepresented their authority to foreclose—an allegation unambiguously refuted above—and (2) Defendants misrepresented "the amount due and owing on the mortgage."[36]

The Prices do not offer a shred of facts to support their allegation that Defendants misrepresented the amount due on the mortgages. The only theory they offer to bolster their claim at all is the implication that because the Prices were "unsuccessful[] requesting to see how

---

[36] Amended Complaint ¶ 21.

the fees and down payments were applied and credited to [their] account[s]," they "now believe[] that Defendant does not know what the correct principal balance of the mortgage is."[37] Because the Prices "believe[]" this, they assert "[t]he state of the mortgage balance was made recklessly without any knowledge of the truth and as a positive assertion."[38]

But the Prices fail to set forth even a skeleton of facts to animate their claim. For example, who made the allegedly reckless statement? When was the statement made, to whom was it made, and under what circumstances—i.e., in a letter, by telephone, etc.? Moreover, what facts suggest the representation was false? And, if false, was made intentionally or even recklessly? The Prices offer nothing to suggest an answer to these questions. The fundamental basis of the Prices' lawsuit is their wrong-headed notion about the enforcement of promissory notes. If that is also all that underlays this allegation of fraud—and they set forth nothing else beyond their conclusory statement regarding what they "believe[]"—then the foundation of their fraud claim is also affirmatively, demonstrably false.

## 2. The Prices have not alleged a fraud claim because they have not alleged detrimental reliance.

The Prices cannot recover for fraud because they have not alleged detrimental reliance upon the alleged fraud. They have not alleged they have done anything in reliance on the alleged fraud other than make payments. But the Prices are unambiguously obligated to make payments under the Loan, and therefore cannot complain they relied to their detriment. *Regent Int'l Hotels, Ltd. v. Las Colinas Hotels Corp.*, 704 S.W.2d 101, 105 (Tex. App.—Dallas 1985, no writ) ("Detrimental reliance does not consist of the performance of preexisting obligations that are properly compensated.").

---

[37] *See* Amended Complaint ¶ 21.
[38] *See* Amended Complaint ¶ 21.

## C. The Prices Failed To Plead A Right To Relief Under The TDCA.

The Prices' effort to state a claim under the TDCA rests entirely upon their argument regarding Defendants' authority to foreclose.[39]   In a massively conclusory statement they allege "[a]ll alleged transfers, assignments, and misstatements of facts regarding the Note by Defendants, and the failure of Defendants to stop foreclosure, constitute violations of the Texas Finance Code."[40]  They compound the vagueness of their allegations by citing two sections of the TDCA, one a "laundry list" statute with eighteen categories of unlawful behavior in addition to a catchall provision[41] and the other listing an additional three categories of prohibited behvior.[42]   There are no facts from which Defendants could piece together which bad acts are alleged against them.   Instead, the Prices rest on such unsupported statements as, "Defendants have threatened to foreclose on Plaintiff[43] residence.   This was coercive and threatening.   This conduct was abusive and harassing.   Such acts were an unconscionable and unfair means to collect the debt allegedly owed."[44]   This is the sort of "unadorned, the-defendant-unlawfully-harmed-me accusation" Rule 12(b)(6) is designed to defeat. *Iqbal*, 129 S. Ct. at 1949.

## D. The Prices' Attempt To Plead A Violation Of The Texas Deceptive Trade Practices Act Fails As A Matter Of Law.

The Prices' Amended Complaint contains another conclusory attempt to appeal to a Texas statute, the DTPA.   In successive sections the Prices trace a form-book outline of a DTPA claim.   Again their claims crumble on the rotten foundation of their arguments regarding Defendants' authority and the Prices' failure to allege any facts to support their claims.

---

[39] *See* Amended Complaint ¶ 23-26.
[40] *See* Amended Complaint ¶ 24.
[41] *See* TEX. FIN. CODE § 392.304.
[42] TEX. FIN. CODE § 392.303.
[43] *See supra*, note 5.
[44] Amended Complaint ¶ 25.

As a preliminary matter, the Prices' DTPA claims are wrong because they allege the claims rely on the proposition that "Defendants can't prove they have the ability to enforce the note because they can't prove they are the holder of the note."[45] As discussed above, this is like alleging a car won't run because the trunk won't open; it is irrelevant. Defendants each have independent authority to foreclose—that issue is determined by reference to the deed of trust, not the notes—Defendants' authority is reflected in the Loan Documents and in the property records, and the Prices' allegations to the contrary are frivolous.

The Prices' appeal to the DTPA also fails to allege a cause of action because the Prices are not "consumers" entitled to protection under that statute. A plaintiff must be a "consumer" in order to have standing to bring an action under the DTPA. TEX. BUS. & COM. CODE § 17.50(a). *See also Marketic v. U.S. Bank Nat'l Assoc.*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006) (citing *Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App.—San Antonio 1996, no writ)). To qualify as a consumer under the DTPA, a plaintiff must seek or acquire goods or services by purchase or lease. § 17.45(4). "Goods" are "tangible chattels or real property purchased or leased for use." § 17.45(1). "Services" constitute any "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." § 17.45(1).

Borrowing money does not constitute the acquisition of a good or service. *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566-67 (Tex. 1984); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174-75 (Tex. 1980); *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex. App.—Fort Worth 2007, pet. denied) (holding loan borrower was not a DTPA "consumer"). Even if a lender provides services that are incidental to the completed mortgage loan, the performance of such services does not transform the borrower into a consumer for

---

[45] Amended Complaint ¶ 31.

purposes of the DTPA. *Maginn v. Norwest Mortg., Inc.*, 919 S.W.2d 164, 1667-67 (Tex. App.—Austin 1996, no writ); *Porter v. Countrywide Home Loans, Inc.*, No. V-7075, 2008 WL 2944670 at *3 (S.D. Tex. July 24, 2008) ("A borrower whose sole objective is a loan does not become a consumer merely because the lender provides services incidental to the loan that are not independent objectives of the transaction."). And while the Supreme Court of Texas has recognized that a lending transaction can be considered the purchase of a good or service if it is incident to the purchase of a tangible good, *see Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707-08 (Tex. 1983), consumer standing still requires that the complaint be about that tangible good. United States District Courts in Texas have dismissed DTPA claims with prejudice where the complaint centers around the foreclosure process rather than the objects purchased with the proceeds of the loan. *See, e.g.*, the U.S. Bank Lawsuit, Docket Entry No. 18; *United States v. Hollis*, No. SA-08-cv-362 NN, 2008 WL 4179474, at *2 (W.D. Tex. Sept. 7, 2008) (J. Nowak) ("Because Hollis is not a consumer under the TDTPA, Count II fails to state a claim upon which relief may be granted. . . . For the reasons explained in this order, I GRANT the government's motion to dismiss (docket entry #13) and DISMISS Hollis's counter-claim. I DENY Hollis's request to amend his counter-claim for the same reasons.").

This claim should be dismissed because it is not justiciable as a matter of law. Even if it were justiciable, the Prices' blanket reference to another eight subsections of a laundry list statute, section 17.46 of the Business and Commerce Code, reveals the unsustainability of the claim under Rule 12(b)(6) scrutiny.

## E. The Prices Failed To Plead A Viable Cause Of Action Under RESPA.

The Prices make a passing reference RESPA to attempt to hold Defendants liable for conclusory violations of the statute.[46]   The Prices' RESPA claim is terminal and should be dismissed with prejudice because the Prices fails to plead sufficient facts to state a plausible claim.   *Iqbal*, 129 S. Ct. at 1949.   As with their other claims, the Prices' bald assertions concerning Defendants' alleged "fail[ure] to notify Plaintiffs of transfers and assignments of interest, [and] fail[ure] to notify Plaintiffs of transfer of mortgage servicing duties at the time of the transfer"[47] are insufficient to satisfy federal plausibility standards.   The Prices fail to allege anything other than naked noncompliance with the statute.   Such vague assertions offer little more than an "unadorned, the-defendant-unlawfully-harmed-me accusation," and  do not "permit the court to infer more than the mere possibility of misconduct[.]"   *Iqbal*, 129 S. Ct. at 1949–50. The Prices' RESPA claim should be dismissed.

## F. The Prices' Attempt To Plead A Breach Of Contract Claim Fails As A Matter Of Law.

The Prices failed to allege a breach of contract.   The first reason for this is simple: they reference vaguely various (unspecified) contractual provisions were that Defendants breached, when in fact no such provisions exist.   There are no contract terms restricting assignment, transfer, or appointment of substitute trustees in the manner the Prices allege.   There is no "duty to attempt to modify the terms of the contract in good faith."[48]   Even if such contractual provisions existed, any oral promise to modify the terms of the Loan Documents secured by the

---

[46] Amended Complaint ¶ 42.  The Prices also get their facts wrong insofar as they allege "both Defendants [are] loan servicers."  ¶ 42.  BONY is not a servicer, it is a trustee of a trust.  The Prices' caption of their lawsuit concedes as much.  BANA is a servicer.  *See* App. at 34-35, **Exhibit 5**, Notice of Substitute Trustee's Sale (identifying the **"Mortgage Servicer"** as "Bank of America, N.A.").
[47] Amended Complaint ¶ 42.
[48] Amended Complaint ¶ 44.

Property is unenforceable pursuant to the statute of frauds. Lastly, their allegations are simply too vague to pass Rule 12(b)(6) scrutiny.

### 1. Defendants could not have breached contractual provisions that do not exist.

The Prices specify the following breaches of (unspecified)[49] contracts: (a) improper assignment of the note, (b) improper appointment of substitute trustees, (c) "[p]roviding false information and taking improper collection actions," (d) breaching a duty to modify the note "as required when the parties incorporated into the contract by reference to the various federal statutes governing the loan modification standards and financial institution duties under those rules and standards,"[50] and (e) failing "to provide timely and accurate account statements as requested and required by the contract, among other things."[51] The reason the Prices have not alleged a cause of action breach of contract with these assertions is simple: no such provisions appear in the Loan Documents, and no such "duties" were created by the Loan Documents. The first three specified breaches depend upon the Prices' debunked theory that Defendants lack authority to foreclose. The Loan Documents' provisions as well as the property records demonstrate the authority to foreclose was agreed to by the parties at origination and assigned in accord with the agreements. The fourth breach is not actionable because there is no contractual duty to follow "various [unspecified] federal statutes" and "rules and standards."[52] Finally, the Loan Documents do not require "timely and accurate account statements."

---

[49] Defendants grant the Prices every benefit of the doubt at the motion to dismiss stage. Despite the fact the Prices fail to specify the contracts that were breached, Defendants assume the Prices intended to reference the Loan Documents relevant to a foreclosure of a first lien interest in the Property, App. at 1-26.

[50] The Prices also make a reference to unspecified violations of "Housing and Urban Development rules and regulation . . . establish[ing] a standard of care and an enumerated understanding between the parties to the contract of the rules and standards they will operate under." Amended Complaint ¶ 43.

[51] Par for the Prices' conclusory course, they do not specify the "contract," the provisions of the contract, or the "other things."

[52] Working entirely by speculation regarding which "federal statutes" and "rules and standards" the Prices might be referencing, Defendants note there is no private right of action under HAMP. *See Cade v. BAC*

## 2. The statute of frauds prevents extra-contractual promises from modifying the Parties' obligations.

Any alleged promise by Defendants (or the Prices) that would modify any party's rights or obligations under the Loan Documents,[53] including assignment or transfer of the notes as well as "[unspecified] other things," is barred by the statute of frauds because this loan exceeds $50,000.[54] *See* TEX. BUS. & COM. CODE § 26.02. Under section 26.02, a loan agreement is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative. § 26.02(b). When an oral agreement purports to modify an agreement that must be in writing, the modification also must be in writing or it is unenforceable. *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 555 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.); *Deuley v. Chase Home Finance LLC*, No. 4:05-CV-4253, 2006 WL 1155230, at *2 (S.D. Tex. April 26, 2006) (citing *Garcia v. Karam*, 276 S.W.2d 255, 257 (Tex. 1955)). "[A] loan agreement includes agreements to 'delay repayment of money' or 'to otherwise extend credit or make a financial accommodation.'" *Deuley*, 2006 WL 1155230, at *3 (quoting TEX. BUS. & COM. CODE § 26.02(a)(2)). Where "a plaintiff seeks to enforce an alleged oral contract, [he] has the burden of proving that the statute of frauds is satisfied." *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 469 (5th Cir. 2002). The Prices have not alleged any document exists that could satisfy the statute of frauds. Because their breach of contract claim must land

---

*Home Loans Servicing, L.P.*, No. H-10-4224, 2011 WL 2470733, at *3-4 (S.D. Tex. June 20, 2011) (holding there is no "legislative intent to provide borrowers a legal cause of action" under HAMP). Of course this is notwithstanding the fact the Prices do not point out what part of the HAMP guidelines were allegedly violated, which would be conclusory in and of itself if the Prices had bothered to even name HAMP as their guiding light. Given the lack of a private right of action under the statute it would seem most plausible to assume the Prices must have intended to reference, their theory that every contract is bound to follow the statute in some unspecified way is doubly improbable.

[53] The Deed of Trust and Note, App. at 1-26.

[54] *See* App. at 1, Note ¶ 1 ("I promise to pay U.S. $116,800.00").

within the four corners of the Loan Agreements, and no provisions exist to vindicate their claims, their breach of contract cause of action must be dismissed.

### 3. The Prices fail to allege any facts to support any breach of the Loan Documents.

The Prices failed to specify any contract that was violated, let alone any provision, and add to the vagueness of their cause of action by incorporating unnamed "various federal statutes" and "rules and standards."[55] The Prices make no attempt to tie the Loan Documents—the only binding agreements between the parties—to the alleged breaches. As such the claim is an "unadorned, the-defendant-unlawfully-harmed-me accusation" and should be dismissed. *Iqbal*, 129 S. Ct. at 1949. Defendants also note that if the Prices' demonstrably false theories regarding Defendants' authority to foreclose were true—that is, if Defendants were not parties to the Loan Documents—then the Prices would have plead themselves out of a breach of contract claim against Defendants.[56]

### G. The Prices Failed To Allege A Basis To Award Them Declaratory Relief.

The Prices ask the Court to declare BANA must produce "the one and only Original Promissory Note" and to declare "that [BANA] has acted unconscionably towards Plaintiff."[57] Neither is an appropriate basis for relief because they fail to allege a justiciable controversy.

The request pertaining to noteholder status should be dismissed because the Prices failed to allege any facts showing the existence of a justiciable controversy. In proceedings under the Declaratory Judgment Act, "the threshold question is whether a justiciable controversy exists."

---

[55] Amended Complaint ¶ 44.

[56] One must be a party to a contract to enforce the contract. *See generally Republic Nat'l Bank v. Nat'l Bankers Life Ins. Co.*, 427 S.W.2d 76 (Tex. Civ. App.—Dallas 1977, no writ) ("It is an elementary rule of law that privity of contract is an essential element of recovery in an action based on contractual theory. Thus generally in order to maintain an action to recover damages flowing from the breach of a written agreement it is ordinarily a necessary prerequisite that there be a privity existing between the party damaged and the party sought to be held liable for the repudiation of the agreement.").

[57] Amended Complaint ¶ 40-41.

---

*See Atlanta Gas Light v. Aetna Cas. and Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995). The Declaratory Judgment Act provides "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Congress limited federal jurisdiction under the Declaratory Judgment Act to actual controversies, in statutory recognition of the fact that federal judicial power under Article III, Section 2 of the United States Constitution extends only to concrete cases or controversies." *Atlanta Gas Light Co.*, 68 F.3d at 414. A party is required to show "that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by a favorable court disposition." *Id.* (internal quotation marks omitted). To evaluate whether the plaintiff has met this burden, the Court "look[s] to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.* (internal quotation marks omitted).

In the case at bar, the Prices seeks a declaration that BANA must produce the note to foreclose. However, the Prices fail to show the existence of a justiciable controversy because, as established above, the parties' authority to foreclose as "mortgagees" under section 51 of the Property Code is independent of their status as noteholders. The request is transparently dilatory in nature and has no purpose other than to forestall Defendants' efforts to enforce the Deed of Trust. There are simply no facts upon which this Court could conclude a justiciable controversy exists as to whether Defendants own or hold the note as their authority to foreclose is independent. Accordingly, the Prices' request for a declaration that BANA must produce the note should be dismissed.

Finally, in a paragraph comprised of a single sentence the Prices seek a declaration that "[BANA] has acted unconscionably towards Plaintiff."[58]  Lacking any context whatsoever, this conclusory statement fails to illustrate how any facts are in dispute.   The contrary is demonstrated throughout the Amended Complaint.   Their fundamental allegation, returned to repeatedly by the Prices, is the Defendants lack authority because of allegations regarding their status as noteholders.  Having demonstrated conclusively the falsehood of this allegation, there is no other fact from which the court could find a dispute regarding any allegedly "unconcionab[ility] towards Plaintiff[s]."[59]

## H. The Prices Have Not Alleged An Entitlement To An Accounting.

Though not alleged clearly, it is possible to interpret the Amended Complaint as containing a request for an accounting.[60]  However, an "action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action."  *See Wigginton v. Bank of New York Mellon*, No. 3:10-CV-2128-G, 2011 WL 2669071, at *4  (N.D. Tex. July 7, 2011) (citing *Michael v. Dyke*, 41 S.W.3d 746 754 (Tex. App.—Corpus Christi 2001, no pet).  Although a trial court has discretion when to order an accounting, it should only do so when the facts and accounts in issue are so complex that adequate relief cannot be obtained at law.  *Id.* (citing *T.F.W. Mgmt, Inc. v. Westwood Shores Prop. Owners Ass'n,* 79 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).  Because the Prices have not alleged why the information they seek could not be easily ascertained through discovery, their claim should be dismissed.  *Id.*

---

[58] Amended Complaint ¶ 41.
[59] Amended Complaint ¶ 41.
[60] *See, e.g.*, Amended Complaint ¶ 17 ("Plaintiffs assert they have the right to have an accounting . . . .").

## I. The Prices Are Not Entitled To Injunctive Relief.

To obtain a temporary injunction under Texas law, a plaintiff "must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The Prices fail on all three counts: (1) they have no viable cause of action against Defendants, (2) they have no chance of relief, and (3) there is no imminent injury. The Court should dismiss this claim for injunctive relief.

## VI. CONCLUSION

Defendants respectfully request the Court grant this motion because the Prices' claims fail as a matter of law and fact. The claims should be dismissed with prejudice as allowing them to restate them would be an act of futility. *See, e.g.*, *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968) (noting that the Federal Rules of Civil Procedure "do not require that courts indulge in futile gestures"). Because the Prices' fail to state a plausible claim for relief, even after an opportunity to amend, Defendants request dismissal of the lawsuit with prejudice.

Date: December 12, 2011

Respectfully submitted,

Michael J. McKleroy, Jr.
SBN: 24000095, FBN: 576095
C. Charles Townsend
SBN: 24028053, FBN: 1018722
Walter McInnis
SBN: 24046394, FBN: 588724
AKERMAN SENTERFITT, LLP
2001 Ross Avenue, Suite 2550
Dallas, Texas 75201
Telephone: 214.720.4300
Facsimile: 214.981.9339
**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2011, a true and correct copy of the foregoing was served as follows:

Caleb Israel Moore
Law Firm of Caleb Moore
2205 Martin Drive
Suite 200
Bedford, TX 76021
817.581.2540 (Facsimile)
*Attorney for Plaintiff*
**VIA FACSIMILE**

Walter McInnis