ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2011 DEC 12  PM 4: 22

CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| MARTHA L. PRICE AND<br>ANGELA L. PRICE,<br><br>Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA, N.A., THE BANK<br>OF NEW YORK MELLON FKA THE<br>BANK OF NEW YORK, AS TRUSTEE<br>FOR CWABS, INC., ASSET BACKED<br>CERTIFICATES, SERIES 2007-02,<br><br>Defendants. | § § § § § § § § § § § § § § § | Civil Action No. 4:11-CV-799-A |

## APPENDIX TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED PETITION FOR FAILURE TO STATE A CLAIM

Defendants files this Appendix as follows:

| EXHIBIT | DOCUMENT | PAGE NO.'S |
|---|---|---|
| **1.** | Note | 1-5 |
| **2.** | Deed of Trust | 6-26 |
| **3.** | Special Warranty Deed | 27-32 |
| **4.** | Assignment of Deed of Trust | 33 |
| **5.** | Notice of Substitute Trustee's Sale | 34-35 |
| **6.** | Order | 36-45 |

Date: December 12, 2011

Respectfully submitted,

Michael J. McKleroy, Jr.
SBN: 24000095, FBN: 576095
C. Charles Townsend
SBN: 24028053, FBN: 1018722
Walter McInnis
SBN: 24046394, FBN: 588724
AKERMAN SENTERFITT, LLP
2001 Ross Avenue, Suite 2550
Dallas, Texas 75201
Telephone: 214.720.4300
Facsimile: 214.981.9339

**ATTORNEYS FOR DEFENDANTS
BANK OF AMERICA, N.A. and THE
BANK OF NEW YORK MELLON, AS
TRUSTEE**

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2011, a true and correct copy of the foregoing was served as follows:

Caleb Israel Moore
Law Firm of Caleb Moore
2205 Martin Drive
Suite 200
Bedford, TX 76021
817.581.2540 (Facsimile)
*Attorney for Plaintiff*
**VIA FACSIMILE**

Walter McInnis

LOAN #: ████0974

# NOTE

DECEMBER 22, 2006        PEARLAND        TEXAS
[Date]                [City]             [State]

4820 PARK BROOK DRIVE, FORT WORTH, TX 76137-5406
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 116,800.00       (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.350 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the FIRST day of each month beginning on FEBRUARY 01, 2007 . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 01, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 885.70

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note. If I make a Partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment.

[ ] I may prepay this Note in full at any time without penalty.

[X] If within the first SIXTY months after the execution of the Note, I make any prepayment(s) within any 12-month period, the total of which exceeds 20 percent (20%) of the original principal amount of this loan, I will pay a prepayment penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds 20 percent (20%) of the original principal amount of the loan.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment.

● BC-TEXAS FIXED RATE NOTE
2D895-TX (08/06)(d)                 Page 1 of 3





APP. 1

LOAN #: ▮▮▮0974

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. APPLICABLE LAW

I agree that this agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the real property is located. If a law, which applies to this loan and sets maximum loan charges is finally interpreted so that the interest and other charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such interest or other charge shall be reduced by the amount necessary to reduce the interest or other charge to the permitted limit; and (b) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment; but in no event will a prepayment charge be assessed if the Note Holder chooses to reduce my principal balance by applying such excess amounts.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable law.

● BC-TEXAS FIXED RATE NOTE
2D896-TX (08/06)

APP. 2

LOAN #: ████ 0974

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**
**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
MARTHA L. PRICE                                    -Borrower

_____
ANGELA L. PRICE                                    -Borrower

_____
                                                   -Borrower

_____
                                                   -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
WITHOUT RECOURSE,
COUNTRYWIDE HOME LOANS, INC., A NEW YORK CORPORATION
DOING BUSINESS AS AMERICA'S WHOLESALE LENDER
BY:_____
MICHELE SOULANGER
EXECUTIVE VICE PRESIDENT

● BC-TEXAS FIXED RATE NOTE
2D895-TX    (08/06)                    Page 3 of 3

APP. 3

**AMERICA'S WHOLESALE LENDER**

DATE:          12/22/2006
BORROWER: MARTHA L. PRICE
CASE #:
LOAN #:          ⬛⬛⬛0974
PROPERTY ADDRESS: 4820 PARK BROOK DRIVE
                  FORT WORTH, TX 76137-5406

Branch #: 0000790
2375 N GLENVILLE DR RGV-B-195
RICHARDSON, TX 75082
Phone: (800)669-2565
Br Fax No.: (N)

# ADDENDUM TO NOTE

This Addendum to Note ("Addendum") amends, supplements and constitutes a part of the terms of my Note dated 12/22/2006                . The provisions of this Addendum provide that I will receive Interest Rate Reductions if I make Timely Payments during specified Eligibility Periods. The terms and conditions I must meet to qualify for these Interest Rate Reductions are described below.

1.  **Definitions.** For purposes of this Addendum, the following definitions apply:

    a.  **Eligibility Periods** means consecutive twelve-month periods, the first of which is the twelve-month period beginning with the month in which my first monthly payment is due.

    b.  **Interest Rate Reduction** means an adjustment to the interest rate on my Note which decreases my interest rate by THREE-EIGHTHS               percent (   0.375 %) below my interest rate in effect immediately preceding such adjustment.

    c.  **Late Charge Date** means the date on which a late charge will be assessed as provided in my Note.

    d.  **Payment in Full** means a payment of all amounts due monthly under the terms of my Note and Security Instrument, including any escrow items, late charges, or other charge or amount imposed under the terms of my Note and Security Instrument.

    e.  **Timely Payment** means a monthly Payment in Full received by the Lender no later than the Late Charge Date.

    Capitalized terms used, but not defined in this Addendum, shall have the meaning given to them in the Note.

2.  **Number of Eligibility Periods.** This Addendum provides for FOUR  (4)      Eligibility Periods.

3.  **Interest Rate Adjustments.** If I am eligible for an Interest Rate Reduction as of the end of an Eligibility Period, then beginning with the payment due in the month following the end of that Eligibility Period my payment will be adjusted to reflect an Interest Rate Reduction.

    **Example: The first Eligibility Period covers the first twelve (12) payments on my loan. If I am eligible for an Interest Rate Reduction, then beginning with the 13th payment my interest rate will be reduced by THREE-EIGHTHS               percent (   0.375 %).**

4.  **Effect of Interest Rate Adjustments.** Each time I receive an Interest Rate Reduction, my reduced interest rate will remain in effect for the balance of the term of my Note unless I qualify for additional Interest Rate Reductions during any subsequent Eligibility Periods. If I qualify for an Interest Rate Reduction in all FOUR  (4)      Eligibility Periods, then my interest rate after the end of my last Eligibility Period will be one and one-half           percent (   1.5 %) below my initial interest rate as stated in Paragraph 2 of my Note.

5.  **Eligibility Conditions for Interest Rate Reduction.** If I meet each of the following terms and conditions during an Eligibility Period, I will be eligible for an Interest Rate Reduction after the end of that Eligibility Period:

    a.  **No Default.** At the beginning of the Eligibility Period, and continuously during the Eligibility Period, I must not be in default in any of my obligations to the Lender under the Note or Security Instrument (including, but not limited to, my obligation to maintain insurance on the collateral property and to pay all amounts due in accordance with the terms of my Note and Security Instrument).

    b.  **Payments in Full.** All of my monthly payments during an Eligibility Period must be Payments in Full. I will not be eligible for an Interest Rate Reduction if any monthly payment I make during an Eligibility Period is not a Payment in Full. Each of my payments during the Eligibility Period must be for the full amount that is due as shown on my monthly statement or payment coupon.

● BC - Addendum to Note
2D491-US (10/99)(d)

Page 1 of 2





APP. 4

LOAN #: ██████0974

c.   **Timely Payments.** (i) I will qualify for an Interest Rate Reduction if all of my monthly payments during an Eligibility Period are Timely Payments, except that I may make no more than one payment in an Eligibility Period after the Late Charge Date but prior to my next payment due date, provided that such payment is not the twelfth (12th) payment due in an Eligibility Period. (ii) Each of my payments during an Eligibility Period must be received by the Lender at the address specified by the Lender.  (iii) If the Lender receives my payment before the Late Charge Date, but the payment instrument is subsequently returned to the Lender unpaid (whether for insufficient funds or otherwise), the payment will not be considered "received" by the Lender until final collection has been made by the Lender on the unpaid instrument or I replace it with another payment instrument which is not subsequently returned to the Lender unpaid. (iv) The Lender shall use its standard procedures for determining the date on which a payment is received.  The date a payment is received is not the date I mail the payment or the postmark date on the envelope. A payment which is received by the Lender later than 5:00 p.m. is considered received the next Business Day. A Business Day means a day on which the Lender is regularly open for business and excludes Saturdays, Sundays or holidays.  If the Lender's receipt of a payment is delayed for any reason such that the payment is not a Timely Payment, I will not be eligible for an Interest Rate Reduction for that Eligibility Period.  I understand that it is my responsibility to ensure that my payments are received by the Lender on or before the Late Charge Date.

6.   **Payment Adjustment Notice.** If I am eligible to receive an Interest Rate Reduction the Lender will adjust my monthly payment to reflect the Interest Rate Reduction  and will give me notice of my new payment amount prior to my next payment due date.

7.   **Failure to Qualify for an Interest Rate Reduction.** If I do not qualify for an Interest Rate Reduction during an Eligibility Period, no adjustment will be made to my interest rate after the end of that Eligibility Period. If I have not qualified for an Interest Rate Reduction during an Eligibility Period, the period for determining my eligibility for Interest Rate Reductions shall not be extended.  My last Eligibility Period will end in the forty-eighth (48th) month of my loan, whether or not I have qualified for any Interest Rate Reduction in prior Eligibility Periods.

8.   **No Other Rate Adjustments.** There will be no reductions in or adjustments to my interest rate other than those described above.

9.   **Late Charges; Reporting to Credit Reporting Agencies.** If I fail to make each monthly payment to the Lender before the Late Charge Date, I will be assessed a late charge as provided in my Note.  Further, if I fail to make each of my monthly payments to the Lender on or before the payment due date specified in Paragraph 3 of my Note, the Lender may report my delinquency to a consumer reporting agency.

10.   **No Charge to Other Terms of Note or Security Instrument.** Except for the Interest Rate Reduction feature described above, all of the terms and conditions of my Note and Security Instrument remain in full force and effect, including without limitation any prepayment penalty which may be a condition of my loan.

**By signing below, I acknowledge that I have read the above terms and conditions and that I understand them and agree to them.**

_Martha L Price_ ......................................... 12/22/0●
Borrower  MARTHA L. PRICE ......................... Date

_Angela L. Price_ ......................................... 12/22/0●
Borrower  ANGELA L. PRICE ......................... Date

_____ _____
Borrower .......................................................... Date

_____ _____
Borrower .......................................................... Date

● BC - Addendum to Note
2D491-US  (10/99)

APP. 5

21



FILED

2011 JAN -8 P 4:05

...DERSON
...Y CLERK

BY

RN TO:
ST AMERICAN TITLE INSURANCE COMPANY
2784 SUNRISE BLVD., SUITE 103
PEARLAND, TEXAS 77584

610    0974  D2  001  001

000    097412006

[Escrow/Closing #]    [Doc ID #]

08806363352

—————— [Space Above This Line For Recording Data] ——————

# DEED OF TRUST

MIN 1000157-0007382883-8

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    DECEMBER 22, 2006    , together with all Riders to this document.

(B) "Borrower" is

MARTHA L PRICE, A SINGLE PERSON, AND ANGELA L PRICE, A SINGLE PERSON

Borrower is the grantor under this Security Instrument.

TEXAS-Modified Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT • 3044 1/01
● Deed of Trust with MERS - TEXAS
1E631-TX (03/06)(d/i)                                    Page 1 of 16





901630

APP. 6

DOC ID #: 000███097412006

(C) **"Lender"** is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK . Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) **"Trustee"** is
CTC REAL ESTATE SERVICES
Trustee's address is
400 COUNTRYWIDE WAY, MSN SV-88 SIMI VALLEY, CA 93065- ,
(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is a beneficiary under this Security
Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone
number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) **"Note"** means the promissory note signed by Borrower and dated DECEMBER 22, 2006 . The Note
states that Borrower owes Lender
ONE HUNDRED SIXTEEN THOUSAND EIGHT HUNDRED and 00/100

Dollars (U.S. $ 116,800.00 ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than JANUARY 01, 2037 .
(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.
(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(M) **"Escrow Items"** means those items that are described in Section 3.
(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

● Deed of Trust with MERS - TEXAS
1E631-TX (03/06) Page 2 of 16

DOC ID #: 000████097412006

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY              of              TARRANT              :
[Type of Recording Jurisdiction]         [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:                                          which currently has the address of
                       4820 PARK BROOK DRIVE, FORT WORTH
                                  [Street/City]
Texas 76137-5406 ("Property Address"):
       [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

● Deed of Trust with MERS - TEXAS
1E631-TX (03/06)                        Page 3 of 16

DOC ID #: 000██████097412006

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance

● Deed of Trust with MERS - TEXAS
1E631-TX (03/06)                          Page 4 of 16

DOC ID #: 000██████097412006

required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

DOC ID #: 000097412006

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and

DOC ID #: 000097412006

restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of

● Deed of Trust with MERS - TEXAS
1E631-TX (03/05)        Page 7 of 16

DOC ID #: 000░░░░097412006

the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

DOC ID #: 000██097412006

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

DOC ID #: 000█████097412006

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance

DOC ID #: 000█████097412006

of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees

DOC ID #: 000████097412006

incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

DOC ID #: 000████097412006

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

DOC ID #: 000███████097412006

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property; Acknowledgment Regarding Manufactured Home Conversion Lien.** Check box as applicable:

☐ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☒ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

DOC ID #: 000097412006

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

☐ **Acknowledgment Regarding Manufactured Home Conversion Lien.**

Owners acknowledge and agree that, to the extent permitted by law, the liens granted or created by this lien document in and to the Property and the manufactured home include, without limitation, a conversion lien under Texas Constitution, Article XVI, §50(a)(8), and, as applicable, Chapter 63 of the Texas Property Code.

**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Martha L Price_ _____ (Seal)
MARTHA L. PRICE                                        -Borrower

_Angela L. Price_ _____ (Seal)
ANGELA L. PRICE                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

● Deed of Trust with MERS - TEXAS
1E831-TX (03/06)                    Page 15 of 16

APP. 20

DOC ID #: 000     097412006

**STATE OF TEXAS**
County of   BRAZORIA

Before me   Dusty Wilson, Notary Public
_____ on this day personally appeared
Martha L. Price and Angela L. Price _____ , known to me
(or proved to me on the oath of _____ or through TX Drivers License      )
to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she/they
executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ 22 _____ day of   December, 2006 _____ .

(Seal)

DUSTY WILSON
Notary Public, State of Texas
My Commission Expires
March 04, 2008

My Commission Expires:

● Deed of Trust with MERS - TEXAS
1E631-TX (03/06)                    Page 16 of 16

# PLANNED UNIT DEVELOPMENT RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423


Prepared By:
MELISSA BLANK


08806363352                    000█████097412006
[Escrow/Closing #]             [Doc ID #]


THIS PLANNED UNIT DEVELOPMENT RIDER is made this TWENTY-SECOND     day of
DECEMBER, 2006   , and is incorporated into and shall be deemed to amend and supplement
the, Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by
the undersigned (the "Borrower") to secure Borrower's Note to
AMERICA'S WHOLESALE LENDER

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:
4820 PARK BROOK DRIVE
FORT WORTH, TX 76137-5406
[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with


**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

~ ⊛ -7R (0405)   CHL (06/04)(d)          Page 1 of 3                    Initials: ___

VMP Mortgage Solutions, Inc. (800)521-7291          Form 3150 1/01

* 2 3 9 9 1 *                    * █████ 0 9 7 4 0 0 0 0 0 2 0 0 7 R *

DOC ID #: 000███████097412006

other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
PARK PLACE ADDITION

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners
Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and
(iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay,
when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender
and which provides insurance coverage in the amounts (including deductible levels), for the periods,
and against loss by fire, hazards included within the term "extended coverage," and any other
hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance,
then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly
premium installments for property insurance on the Property; and (ii) Borrower's obligation under
Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent
that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage
provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair
following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable
to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the
sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to
Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure
that the Owners Association maintains a public liability insurance policy acceptable in form, amount,
and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential,
payable to Borrower in connection with any condemnation or other taking of all or any part of the
Property or the common areas and facilities of the PUD, or for any conveyance in lieu of
condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by
Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's
prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or
termination of the PUD, except for abandonment or termination required by law in the case of
substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent
domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the

Initials: ___

-7R (0405)       CHL (06/04)        Page 2 of 3                        Form 3150 1/01

DOC ID #: 000███████097412006

express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

    **F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
MARTHA L. PRICE                                                                          - Borrower

_____ (Seal)
ANGELA L. PRICE                                                                          - Borrower

_____ (Seal)
                                                                                                    - Borrower

_____ (Seal)
                                                                                                    - Borrower

VMP-7R (0405)          CHL (06/04)                Page 3 of 3                    Form 3150  1/01

APP. 24

# RENEWAL AND EXTENSION EXHIBIT
### TO BE ATTACHED TO THE DEED OF TRUST

This Renewal and Extension Exhibit is incorporated into and shall amend and supplement the Security Instrument of even date herewith. The Note is in renewal and extension, but not in extinguishment, of the indebtedness, whether one or more, described as follows:

RECORD A RELEASE OF DEED OF TRUST TO SECURE A NOTE:

GRANTOR: MARTHA L. PRICE AND ANGELA L. PRICE
TRUSTEE: ANTHONY H. BARONE
BENEFICIARY: CENTEX HOME EQUITY COMPANY, LLC, A LIMITED LIABILITY COMPANY
DATED: DECEMBER 17, 2003
RECORDED: JANUARY 9, 2004 IN COUNTY CLERK'S FILE NO. D204008720, OF THE
OFFICAL RECORDS OF TARRANT, COUNTY, TEXAS
AMOUNT: $129,500.00

Lender is expressly subrogated to all rights, liens, equities and remedies securing the original holder(s) of the above debt(s) and the original lien(s) securing the same are renewed and extended to the date of maturity of the Note secured by the Security Instrument in renewal and extension of the indebtedness. Borrower acknowledges that the lien(s) securing the prior debt(s) is valid, that the lien(s) subsists against the Property, and that by this instrument it is renewed and extended in full force until the Note is paid, even though the original lien(s) is released and not assigned to Lender.

This renewal and extension is not a refinance of a debt any portion of which is an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution.

In addition to the refinance of principal and any interest, if Lender is advancing all or a portion of the costs necessary to refinance debt on the Property, Borrower acknowledges that these costs are reasonable and necessary costs to refinance such debt. Borrower has received no funds from this Loan but only the benefit of those sums advanced for the payment of 1) principal and any interest on loans being refinanced, 2) any reasonable and necessary closing costs, and 3) any refund to Borrower of closing costs escrowed in connection with the Loan advanced by Borrower. If any portion of the Loan secures a debt for work or material used in constructing improvements on the Property, Borrower understands that funds not used in such construction, if any, must first be used to reduce the unpaid principal of the Loan or, at Lender's option, the Note must be modified to evidence the actual funds advanced.

Loan No.: ████0974                          Initials: _MℰP_ _ALP_

Renewal and Extension Exhibit (Texas)
——— THE COMPLIANCE SOURCE, INC. ———
To Order Call: (972) 980-2178 · Fax (972) 392-2891
www.compliancesource.com



(page 1 of 1 pages)
04565TX 08/98   Rev. 07/99
©1998, All Rights Reserved

## LEGAL DESCRIPTION

Lot 2, Block 3, PHASE I, PARK PLACE ADDITION, an Addition
to the City of Fort Worth, Tarrant County, Texas, according to the
map or plat thereof recorded in Cabinet A, Slide 1723, Plat
Records, Tarrant County, Texas.

RETURN TO:
FIRST AMERICAN TITLE INSURANCE COMPANY
2734 SUNRISE BLVD., SUITE 103
PEARLAND, TEXAS 77584

State of Texas

**SPECIAL WARRANTY DEED**
Vendor's Lien

FHA Case No. 492-577157
GF No. TX02--13090--FW17

**FATCO**

**\*\*THIS DOCUMENT IS BEING RE-FILED FOR THE SOLE PURPOSE OF ADDITION THE LEGAL DESCRIPTION\*\*\*\***

State of Texas
County of Tarrant

Know All Men By These Presents:

That **MEL MARTINEZ**, Secretary of Housing and Urban Development, of Washington, D.C., (hereinafter called "Grantor"), for and in consideration of the sum of TEN AND NO/100THS------------------------**Dollars** ($10.00) and other good and valuable consideration to him/her paid by Martha L Price and Angela L Price (herein referred as "GRANTEE"), whose address is 7716 B College Cr., N. Richland Hills, TX 76180 and the execution and delivery by Grantee(s) herein of one Note of even date herewith in the principal sum of $114,323.00 payable to the order of Home Loan Corp. (hereinafter called "Mortgagee"), it having advanced that amount toward the purchase price of the herein conveyed land, with the express understanding and agreement that the Vendor's Lien would be retained herein to secure such sum and that superior title would vest in it until full payment thereof, becoming due in monthly installments and bearing interest as in said Note specified; and Note providing further for additional interest on all past due indebtedness, for acceleration of maturity, and for 10% attorney's fees in the event of forced collection thereof, all as will appear more fully in deed of Trust of even date therewith to Allan B. Polunsky ("Trustee"), and by a first and superior lien covering the hereinafter described property;

**Has Granted, Sold and Conveyed**, and by these presents does **Grant, Sell and Convey** unto the said Grantee(s), all that certain lot or parcel of land situated in the County of Tarrant, State of Texas, described as follows, to wit:

SEE "EXHIBIT A"

**Being** the same property acquired by the Grantor pursuant to the provisions of the National Housing Act, as amended (12 U.S.C. § 1701 et.seq.) and the Department of Housing and Urban Development Act (42 U.S.C. § 3531).

**To Have and To Hold** the above described property, together with all and singular the rights and appurtenances thereunto in any way belonging, unto the Grantee(s) and to the heirs and assigns of said Grantee(s) forever, **Subject** to and as **Affected** by, however, all easements, covenants, restrictions, reservations, conditions and rights appearing of record; and **Subject** to any state of facts which an accurate survey would show.

TRUE AND CORRECT COPY OF
ORIGINAL RECORD FILED IN
TARRANT COUNTY, TEXAS;
SUZANNE HENDERSON, COUNTY CLERK

BY _____ Deputy

Page 1 of 2

**Grantor** hereby binds himself/herself, his/her successor and assigns, to warrant and forever defend, with the exceptions stated above, all and singular, the said property unto the said Grantee(s) and to the heirs and assigns of said Grantee(s), against every person whomsoever lawfully claiming or to claim the same, or any part thereof, by through, or under Grantor, but not otherwise.

**But It Is** expressly agreed and understood that the vendor's lien is retained against the above described real estate and all improvements thereon, or hereafter to be placed thereon, until the above described note, and all interest thereon, is fully paid, when this deed shall become absolute.

**For** and in consideration of the advancement in cash by Mortgagee of that portion of the purchase price of said property, as is evidenced by said note, the Grantor does hereby transfer and assign unto Mortgagee the vendor's lien against said property and the superior title thereto to secure the payment of said note, without recourse.

This deed is not to be in effect until _JUNE 6, 2002_

**In Witness Whereof** the undersigned on this _5th_ day of _June_____, 200_2_ has set his/her hand and seal as Attorney-in-Fact for and on behalf of the said Secretary of Housing and Urban Development.

Witnesses:

Secretary of Housing and Urban Development
First Preston Management, Inc.
as Prime Contractor #C-OPG-21328

By: _____ (Seal)

For HUD by
Lezlee Kocian                              **Attorney in Fact**
Post Closing Coordinator
(Type or Print Name)


**State of Texas**
**County of Dallas**

Before me, the undersigned authority, on this day personally appeared the above named individual duly authorized to sign for First Preston Management, Inc., the Attorney-in-Fact for the Secretary of Housing and Urban Development, who executed the foregoing instrument as Attorney-in-Fact for and on behalf of the Secretary of Housing and Urban Development.

Given under my hand and seal this _5_ day of _JUN_____, 200_

After Recording Return to:                    Notary Public, State of Texas
Martha Price & Angela Price
4820 Park Brook Drive                          Printed Name:
Fort Worth, TX 76137                           My Commission Expires:

MARK C. PALUMBO
MY COMMISSION EXPIRES
October 29, 2005

TRUE AND CORRECT COPY OF
ORIGINAL RECORD FILED IN
TARRANT COUNTY, TEXAS:
SUZANNE HENDERSON, COUNTY CLERK

BY _____ Deputy

Page 2 of 2

D202159194
MARTHA PRICE
4820 PARK BROOK DR
FT WORTH TX 76137

—W A R N I N G—THIS IS PART OF THE OFFICIAL RECORD—D O   N O T   D E S T R O Y

I N D E X E D — T A R R A N T   C O U N T Y   T E X A S
S U Z A N N E   H E N D E R S O N -- COUNTY CLERK
O F F I C I A L   R E C E I P T

T O:   FIRST AMERICAN TITLE CO

| RECEIPT NO | REGISTER | RECD-BY | PRINTED DATE | TIME |
|---|---|---|---|---|
| 202303245 | DR2A | TB | 06/11/2002 | 11:55 |

| | INSTRUMENT | FEECD | | INDEXED | TIME | |
|---|---|---|---|---|---|---|
| 1 | D202159194 | WD | | 20020611 | 11:55 | CG |

T O T A L :   DOCUMENTS: 01     F E E S:        11.00

B Y: _____

ANY PROVISION WHICH RESTRICTS THE SALE RENTAL OR USE
OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE
IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

TRUE AND CORRECT COPY OF
ORIGINAL RECORD FILED IN
TARRANT COUNTY, TEXAS:
SUZANNE HENDERSON, COUNTY CLERK

BY _____ Deputy



Unofficial Document

STATE OF TEXAS } I, SUZANNE HENDERSON, County Clerk in and for said County, and State
COUNTY OF TARRANT } do hereby certify that the above and foregoing is a true and correct copy
of the instrument, filed for record on the ____ day of ____ and duly recorded on
the _11_ day of ___June 2002___ Instrument Number _D202159194_ or in
Volume ____ Page ____ of the
_Real prop_ Records of Tarrant County, Texas.
WITNESS my hand and seal of office at Fort Worth, Texas this _25_ day of _July, 02_
SUZANNE HENDERSON, COUNTY CLERK
TARRANT COUNTY, TEXAS
BY: _Jeremy Morant_ Deputy

## SCHEDULE A

*Accurate description of the property:*

ALL THAT CERTAIN tract or parcel of land, situated, lying, and being in the City of Fort Worth, County of Tarrant, State of Texas.

LOT 2, BLOCK 3 OF PHASE I, PARK PLACE ADDITION, AN ADDITION TO THE CITY OF FORT WORTH, TARRANT COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN CABINET A, SLIDE 1723, PLAT RECORDS, TARRANT COUNTY, TEXAS.



D202207700
MARTHA & ANGELA PRICE
4820 PARK BROOK DR
FT WORTH TX 76137

—W A R N I N G—THIS IS PART OF THE OFFICIAL RECORD——D O   N O T   D E S T R O Y

I N D E X E D — T A R R A N T   C O U N T Y   T E X A S
S U Z A N N E   H E N D E R S O N — COUNTY CLERK
O F F I C I A L   R E C E I P T

T O:   FIRST AMERICAN TITLE CO

RECEIPT NO              REGISTER    RECD-BY     PRINTED DATE    TIME
202364409              DR2A        PM          07/30/2002      08:29

          INSTRUMENT   FEECD              INDEXED      TIME
    1     D202207700   WD                 20020730     08:29     CG

    T O T A L :  DOCUMENTS: 01            F E E S:        17.00

B Y: _____

ANY PROVISION WHICH RESTRICTS THE SALE RENTAL OR USE
OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE
IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

APP. 32

**Electronically Recorded**
Official Public Records

*Mary Louise Garcia*

Mary Louise Garcia

Tarrant County Texas

8/26/2011 10.43 AM          D211206992

PGS    1      $16.00

Submitter: SIMPLIFILE

This is for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

DocID#    097419523

| Recording Requested By: | When recorded mail to: |
|---|---|
| Bank of America | CoreLogic |
| Prepared By: | 450 E. Boundary St. |
| Danilo Cuenca | Attn: Release Dept. |
| 888-603-9011 | Chapin, SC 29036 |
| 450 E. Boundary St. | |
| Chapin, SC 29036 | |

Property Address:
4820 Park Brook Dr
Fort Worth, TX 76137-5406
TX0-ADT 14169760          8/15/2011

MIN #: 1000157-0007332383-8          MERS Phone #:  888-679-6377

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-2 whose address is 101 BARCLAY ST - 4W, NEW YORK ,NY 10286 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:    AMERICA'S WHOLESALE LENDER

Borrower(s):    MARTHA L PRICE, A SINGLE PERSON, AND ANGELA L PRICE, A SINGLE PERSON

Original Trustee:    CTC REAL ESTATE SERVICES

Date of Deed of Trust:    12/22/2006

Original Loan Amount:    $116,800.00

Recorded in Tarrant County, TX on: 1/9/2007, book N/A, page N/A and instrument number D207009628

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

8-24-11

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By:

Cynthia Santos, Assistant Secretary

State of California
County of Ventura

On 8-24-11 before me, BARBARA J. GIBBS, Notary Public, personally appeared Cynthia Santos
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public:
My Commission Expires: 09-9-2013          (Seal)

BARBARA J. GIBBS
Commission # 1864166
Notary Public - California
Los Angeles County
My Comm. Expires Sep 9, 2013

610          0974   D8   001   003

11 -0100781
11-6-279013A
4820 PARK BROOK DRIVE, FORT WORTH, TX 76137-5406



10929184

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

**Deed of Trust Date:**
December 22, 2006

**Grantor(s)/Mortgagor (s):**
MARTHA L. PRICE, A SINGLE PERSON,
AND ANGELA L. PRICE, A SINGLE PERSON

**Original Mortgagee:**
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC

**Current Mortgagee:**
THE BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK, AS TRUSTEE
FOR THE CERTIFICATEHOLDERS OF
CWABS, INC., ASSET-BACKED
CERTIFICATES, SERIES 2007-2

**Recorded on:** January 9, 2007
**As Clerk's File No.:** D207009628

**Property County:**
Tarrant

**Re-Recorded**

**Mortgage Servicer:**
Bank of America, N.A.

**Legal Description:** LOT 2, BLOCK 3, PHASE I, PARK PLACE ADDITION, AN ADDITION TO
THE CITY OF FORT WORTH, TARRANT COUNTY, TEXAS, ACCORDING TO THE MAP OR
PLAT THEREOF RECORDED IN CABINET A, SLIDE 1723, PLAT RECORDS, TARRANT
COUNTY, TEXAS.

**Date of Sale:** November 01, 2011          **Earliest Time Sale Will Begin:** 1:00 PM

**Place of Sale of Property:** The base of the Courthouse steps on the East side of the building, OR AS
DESIGNATED BY THE COUNTY COMMISSIONERS.

The Substitute Trustee will sell the property by public auction to the highest bidder for cash at the place
and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that
time.

## ACTIVE MILITARY SERVICE NOTICE

Assert and protect your rights as a member of the armed forces of the United States. If you or your
spouse is serving on active military duty, including active military duty as a member of the Texas
National Guard or the National Guard of another state or as a member of a reserve component of
the armed forces of the United States, please send written notice of the active duty military service
to the sender of this notice immediately.

Bank of America, N.A. is acting as the Mortgage Servicer for THE BANK OF NEW YORK MELLON
FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF
CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2007-2, who is the Mortgagee of the
Note and Deed of Trust associated with the above referenced loan. Bank of America, N.A., as the
Mortgage Servicer, is representing the Mortgagee, whose address is 400 COUNTRYWIDE WAY, SIMI
VALLEY, CA 93065.

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with
the Mortgagee. Pursuant to the Servicing Agreement and Texas Property code § 51.0025, the Mortgage
Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property
securing the debt.

Dated: October 7, 2011

Page 1 of 2          *TXNtcOfSubTSale.doc_2011.8.0_08/2011*

APP. 34

David Stockman, Janae Urbanczyk or John D.
Borin or RECONTRUST COMPANY, N.A.,
Substitute Trustee
c/o RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-984-0407,
Richardson, TX 75082

*TXNtcOfSubTSale.doc_2011.8.0_08/2011*

APP. 35

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

LINDSAY T. KAN,

             **Plaintiff,**

-vs-                                            **Case No.  A-11-CA-381-SS**

ONEWEST BANK, FSB,

             **Defendant.**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant OneWest Bank, FSB's Motion to Dismiss for Failure to State a Claim [#18], Plaintiff Lindsay T. Kan's response thereto [#22], and OneWest's reply [#24]. Having reviewed the above documents, the applicable law, and the case file as a whole, the Court enters the following opinion and orders, GRANTING OneWest's motion in part and DENYING in part.

### Background

Removed here on the basis of diversity jurisdiction, this is a foreclosure case. Kan, a resident of California, apparently purchased at least two homes in Texas, possibly as investment properties. He subsequently, with at least one possible confederate, a Michael J. Eberle, appears to have set up an elaborate series of purported transfers and assignments, seeking to escape his responsibilities to his creditors under the note and deed of trust. Specifically, he is alleged to have recorded a series of very dubious documents, including (1) a "Modification of Deed of Trust," which purported to modify the secured amount to "$0.00," Def.'s Mot. Dism. [#18], Ex. E; (2) a "Substitute of Trustee" by which Kan, acting as "trustor," purported to transfer the trusteeship to a "D.T.S.A. Trust," *id.* Ex.

F; a "Full Reconveyance" attempting to release the deed of trust, signed by Michael J. Eberle,[1]

purporting to act for the D.T.S.A. Trust, *id.* Ex. G; and a "Recission of Substitute Trustee's Sale"

purportedly rescinding notice of the foreclosure sale, *id.* Ex. H.[2] Curiously, Kan also conveyed his

interest in the property to the D.T.S.A. Trust. *Id.* Ex. I.

In an apparent attempt to give these spurious recordings legal effect, he sent letters to the

creditor and servicer entities, informing them of his intention to carry out the above recordings, and

warning them they had only three days to respond, or he would "presume you waive any objection."

*Id.* Ex. E. And indeed, in letters dated only four days later, he asserted his recordings were effective,

having received no reply. *Id.* He is alleged to have attempted a similar scheme for his other Texas

property in a prior case before this Court. *See* Rule 26(f) Joint Status Report at 2, *Kan v. U.S. Bank,*

*N.A.,* No. 1:10-cv-00939-SS (W.D. Tex. Feb. 4, 2011).

Kan has not denied or responded to these allegations. Nor does he deny he is in default, or

claim he has any right at law or in equity to avoid foreclosure. He simply challenges, as so many

wrongful-foreclosure plaintiffs do, whether OneWest is the party authorized to foreclose on the

property, or whether the correct party is some other unknown entity. As is all too typical, Kan's

complaint lists a slew of boilerplate causes of action,[3] but, in substance, he relies on a variation of

---

[1] Eberle's full role in Kan's scheme is not entirely clear from the record, but it is difficult to imagine how he could have signed this document in good faith.

[2] This series of unauthorized recordings is similar to another mortgage fraud scheme coming out of California, the so-called "Dorean Process." *See U.S. v. Johnson,* No. CR 05-0611 WHA, 2008 WL 205596 (N.D. Cal. Jan. 24, 2008).

[3] Specifically: (1) fraud, (2) breach of contract, (3) violation of the Texas Debt Collection Act, (4) violation of due process, (5) breach of fiduciary duty, (6) violation of the Texas Deceptive Trace Practices Act, (7) perjury, (8) violation of sections 12.001 and 51.0025 of the Texas Property Code, (9) violation of section 406.009 of the Texas Government Code, (10) violation of the homestead provision of the Texas constitution, and (11) violation of a mysterious "Rule 736(l)." Def.'s Notice of Removal [#1], Ex. 1 (Pl.'s Compl.) at 5–6.

the dubious "show-me-the-note" theory. Atypically of such plaintiffs, however, Kan is represented by counsel, and the Court is particularly dismayed to see a lawyer advancing this argument when it is now so completely unsupported by the statutes and jurisprudence of this state.[4] Unsurprisingly, OneWest has moved for dismissal with prejudice pursuant to Rule 12(b)(6). OneWest has also requested attorney's fees under section 392.403 of the Texas Debt Collection Act,[5] alleging Kan's action under the Act was brought in bad faith or for purposes of harassment. Def.'s Mot. Dism. [#18] at 13–14.

### Analysis

### I.     Rule 12(b)(6)—Legal Standard

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint under Federal Rule of Civil Procedure 8. According to Rule 8, a pleading stating a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief. FED. R. CIV. P. 8(a). The complaint in this case fails to comply with Rule 8(a)(2).

The primary purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

---

[4]Kan attached to his response a decision by a Florida Court of Appeals, which is strong authority for the proposition he might have stated a claim, were this action arising under Florida law. Sadly for him, it is irrelevant authority here.

[5]Although OneWest refers to section 392.304 on this point, the correct section appears to be 392.403. *Compare* TEX. FIN. CODE ANN. § 392.304 (West 2006) (enumerating "fraudulent, deceptive, or misleading" representations) *with id.* § 392.403(c) (authorizing attorney's fees "[o]n a finding by a court that an action under this section was brought in bad faith or for purposes of harassment").

APP. 38

In furtherance of the "fair notice" principle, the Supreme Court issued opinions in 2007 and 2009, announcing and clarifying the standard for what a complaint must contain to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[6] For a complaint to meet the pleading requirements of Rule 8(a)(2) and to survive a Rule 12(b)(6) motion to dismiss, the following conditions must be met: (1) every element of each cause of action must be supported by specific factual allegations; and (2) the complaint must state a plausible claim for relief.

1. **Conclusory Legal Assertions are Insufficient**

A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) (citing *United States v. Gaubert*, 499 U.S. 315, 327 (1991)). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, "a plaintiff must plead specific facts, not mere conclusory allegations," *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (internal citations omitted).

2. **Complaint Must State a Plausible Claim for Relief**

Conclusory assertions set aside, and considering only well-pleaded factual allegations, a complaint will only survive a motion for dismissal if the plaintiff pleads sufficient facts to state a

---

[6] The Court urges Kan's counsel to *read* the *Iqbal* and *Twombly* decisions, and to be certain to cite them when he responds to Rule 12 motions in the future. It is inexcusable to cite only the now-overruled *Conley* standard on this point. *See* Pl.'s Resp. [#22] at 3.

claim for relief that is facially plausible. *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task" that must be performed in light of a court's "judicial experience and common sense." *Id.* at 1950.

Furthermore, factual allegations must be placed in a context plausibly suggesting (not merely consistent with) each required element of the claim against each defendant. *See Twombly*, 550 U.S. at 557 (parallel conduct by seven telephone companies that could just as well be independent action did not plausibly suggest conspiracy or agreement among the companies, a required element for a claim under the Sherman Act). Similarly, in *Iqbal* the Supreme Court held a complaint must include factual allegations plausibly establishing all elements required for the particular legal theory. *See Iqbal*, 129 S. Ct. at 1952 (taking all factual allegations as true, plaintiff's claim did not "show, or even intimate" defendants purposely discriminated).

**B.    Rule 12(b)(6)–Application**

In his response to OneWest's motion, Kan admits seven of his causes of action are unsupportable as a matter of law, specifically (1) breach of fiduciary duty, (2) DTPA violation, (3) perjury, (4) section 12.001 of the Property Code, (5) section 406.009 of the Government Code, (6) the homestead provisions of the Texas constitution, and (7) Rule 736(l). Pl.'s Reply [#22] at 5–6. These Court therefore GRANTS OneWest's motion as to those seven causes of action, and they are accordingly DISMISSED WITH PREJUDICE

Kan's remaining four causes of action are (1) fraud, (2) breach of contract, (3) violation of the Texas Debt Collection Act, and (4) violation of due process.  As to all of these, the thrust of Kan's complaint and his response to OneWest's motion to dismiss is to assert OneWest cannot show it is the holder of the note, or is otherwise authorized to enforce the note.[7]  Accepting this allegation as true, it nevertheless does not state a claim for which relief can be granted, under any of the four causes of action.  Rather, if it is true, it is a matter to be litigated by whoever claims to be the proper note holder.  In essence, Kan is pleading the "show me the note" theory, which fails under Texas law, as this Court has explained at length in other opinions.  *See, e.g., Ray v. CitiMortgage, Inc.*, No. A-11-CA-441-SS, 2011 WL 3269326, at *3–4 (W.D. Tex. July 25, 2011).

Briefly, it bears repeating that foreclosure enforces the deed of trust, not the underlying note. *See Slaughter v. Qualls*, 139 Tex. 340, 346 (1942) (a trustee's power to sell a debtor's property derives solely from the deed of trust); *Aguero v. Ramirez*, 70 S.W.3d 372, 375 (Tex. App.—Corpus Christi 2002, pet denied) (applying different statutes of limitations to actions seeking to enforce a lien or deed of trust or to foreclose on property used as security, and to actions seeking to enforce a promissory note).  Accordingly, nothing requires a mortgage servicer to possess the original promissory note as a prerequisite to foreclosure. *See Broyles v. Chase Home Fin.*, No. 3:10-CV-2256-G, 2011 WL 1428904, at *3 (N.D. Tex. Apr. 13, 2011); *Griffin v. BAC Home Loans Servicing, L.P.*, No. H-09-03842, 2011 WL 675285, at *2 (S.D. Tex. Feb. 26, 2011); *Sawyer v. Mortg. Elec. Registration Sys., Inc.*, No. 3:09-CV-2303-K, 2010 WL 996768, at *3 (N.D. Tex. Feb 1, 2010), *adopted*, 2010 WL 996917 (N.D. Tex. Mar. 17, 2010).  Indeed, the Texas Property Code

---

[7]"There is not any evidence before the Court that the Defendant has the original mortgage and note." Def.'s Notice of Removal [#1], Ex. 1 (Pl.'s Compl) at 5.

contemplates the mortgage servicer will often represent the mortgagee, who may or may not possess the note itself. *See* TEX. PROP. CODE ANN. § 51.0001(4) (West 2007) (a mortgagee may be the "holder of a security instrument" or a "book entry system"). Kan cites two Texas courts of appeals cases for the proposition that only the note holder can foreclose, but those cases were regarding workman and materialman's liens under the Texas Business and Commerce Code, not purchase mortgages under the Property Code. *See Leavings v. Mills*, 175 S.W.3d 301, 305, 309–11 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Shepard v. Boone*, 99 S.W.3d 263, 264, 265–66 (Tex. App.—Eastland 2003, no pet.).[8]

The current statutory procedure for a deed of trust foreclosure does *not* require mortgage servicers to produce or hold the note. The mortgage servicer need only provide notice of default, with an opportunity to cure, and notice of the actual foreclosure sale. *See* TEX. PROP. CODE ANN. § 51.002(b), (d) (West 2010). Production of the original promissory note is not necessary. *Crear v. JP Morgan Chase Bank, N.A.*, No. 10-10875, 2011 WL 1129574, at *1 n.1 (5th Cir. Mar. 28, 2011) (unpublished, per curiam). The Property Code also specifically enables mortgage servicers to foreclose if they (1) are authorized to do so by agreement with the mortgagee, and (2) disclose their relationship to the mortgagee in the the notices required by section 51.002. *See* TEX. PROP. CODE ANN. § 51.0025 (West 2007). Again, there is no requirement to produce or even possess the note, original or otherwise. *See id.*

---

[8]The Court notes as well Kan's response cited *Leavings* incorrectly, making it appear to be a Texas Supreme Court case. *See* Pl.'s Resp. [#22] at 3. While the Court does not expect a lawyer whose office is in the depths of Arkansas to be familiar with the niceties of the Greenbook, or expect every citation to exhibit technical perfection, Kan's counsel should have at least ensured his citation was substantively accurate on this point. *See* THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION 267–68 tbl. T1 (Columbia Law Review Ass'n et al. eds., 19th ed. 2010).

Because all four of Kan's remaining claims are premised on shear speculation as to whether (1) OneWest is authorized to enforce the note, (2) OneWest or other entities "robosigned" unspecified documents, and (3) on what the exact sequence of transfers was between the prior creditors—without any effort to explain how those facts would give rise to a cause of action, other than the above note-holder issue—they all fail to state a claim for which relief can be granted. *See Iqbal*, 129 S. Ct. at 1949. Indeed, they are conclusory and facially implausible as causes of action. *See id.* Rather than in any way calling into question OneWest's authority to foreclose as servicer under the deed of trust (which is conclusively demonstrated by the record, *see* Def.'s Mot. to Dismiss [#18], Exs. A, C, D, and the law, *see* TEX. PROP. CODE ANN. §§ 51.002, 51.025 (West 2010, 2007)), Kan has done little more than speculate about facts which are either irrelevant, or which would only be actionable as between Kan's creditors. Accordingly (although the Court declines to grant OneWest's motion to dismiss them with prejudice) they are DISMISSED WITHOUT PREJUDICE.

## II. Attorney's Fees Under the Debt Collection Act

Attorney's fees are generally recoverable only where authorized by statute or contract. *Kessler v. Penn. Nat'l Mut. Cas. Ins. Co.*, 531 F.2d 248, 255 (5th Cir. 1976); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). A court has greater equitable discretion in awarding attorney's fees under a statute than under a contractual provision. *Spinks v. Chevron Oil. Co.*, 507 F.2d 216, 226 (5th Cir. 1975). When a party also seeks attorney's fees, it must prove both the amount of the fees and the reasonableness of the fees, subject to court inquiry. *See Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (5th Cir. 1985).

The Texas Debt Collection Act provides: "On a finding by a court that an action under this section was brought in bad faith or for purposes of harassment, the court shall award the defendant

-8-

attorney's fees reasonably related to the work performed and costs." TEX. FIN. CODE ANN. § 392.403(c) (West 2006). The Fifth Circuit declined to award attorney's fees against a TDCA plaintiff whose complaint contained "everything but the kitchen sink," but where nevertheless the plaintiff had made "substantial claims" against the defendants under the TDCA. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1211 (5th Cir. 1985).

Here, Kan's complaint does not make any substantial claims under the Act. Rather, it simply references the "laundry list" section of the Act, without specifically identifying how OneWest is supposed to have violated the act, or what the alleged violation might be. Def.'s Notice of Removal [#1], Ex. 1 (Pl.'s Compl) at 6. Kan's response is similarly conclusory on this point. His only argument on this is the following: "Plaintiff's Section 392.304 of the Texas Debt Collection Act Was Not Brought in Bad Faith. If the Court believes Plaintiff's allegations were unclear the Plaintiff should be allowed to file an amended complaint. . . . Furthermore, a foreclosure is a debt collection." Def.'s Resp. [#22] at 5 (citations omitted). At no point does Kan make any effort to connect his factual allegations to a specific section of the Act. His complaint and response fail to demonstrate that his lawyer undertook a reasonable investigation of the facts or the law, or that he is making an argument for an extension of the law.[9] As such, the Court finds as a matter of law that Kan's complaint under the TDCA was brought in bad faith or for purposes of harassment. Moreover, the equities are entirely against Kan. He has demonstrated no rights at law or equity in the property, and apparently engaged in activities which were likely fraudulent. Accordingly, the Court conditionally GRANTS OneWest's request for attorney's fees, and ORDERS OneWest's counsel to file, within

---

[9] Indeed, it is perhaps unfortunate that OneWest did not file a motion for sanctions under Rule 11 alongside its request for attorney's fees, as Kan's lawyer's failure to investigate the law extends to Kan's other causes of action as well.

-9-

fifteen days of entry of this order, argument and proof as to its reasonable fees.

Accordingly,

IT IS ORDERED that Defendant OneWest Bank, FSB's Motion to Dismiss for Failure to State a Claim [#18] is GRANTED IN PART and DENIED IN PART as described above;

IT IS FURTHER ORDERED that Plaintiff Lindsay T. Kan's causes of action for (1) breach of fiduciary duty, (2) DTPA violation, (3) perjury, (4) section 12.001 of the Property Code, (5) section 406.009 of the Government Code, (6) the homestead provisions of the Texas constitution, and (7) Rule 736(l), are all DISMISSED WITH PREJUDICE;

IT IS FURTHER ORDERED that Plaintiff Lindsay T. Kan's causes of action for (1) fraud, (2) breach of contract, (3) violation of the Texas Debt Collection Act, and (4) violation of due process are all DISMISSED WITHOUT PREJUDICE;

IT IS FURTHER ORDERED that Defendant OneWest Bank, FSB's request for attorney's fees is conditionally GRANTED, and OneWest's counsel is ORDERED to FILE, within fifteen days of entry of this order, argument and proof as to its fees.

IT IS FINALLY ORDERED that Plaintiff Lindsay T. Kan's complaint is DISMISSED WITHOUT PREJUDICE, although this Court retains jurisdiction to determine the issue of attorney's fees.

SIGNED this the __27__ day of October 2011.

_Sam Sparks_
SAM SPARKS
UNITED STATES DISTRICT JUDGE

381 mot dism ord jih.frm

-10-